UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JUDITH L. ROSO, | ) | CASE NO. 5:09CV198 |
| | ) | |
| Plaintiff, | ) | JUDGE PETER C. ECONOMUS |
| | ) | Magistrate Judge George J. Limbert |
| | ) | |
| v. | ) | |
| | ) | |
| COMMISSIONER OF | ) | **REPORT AND RECOMMENDATION** |
| SOCIAL SECURITY, | ) | **OF MAGISTRATE JUDGE** |
| | ) | |
| Defendant. | ) | |
| | ) | |

Judith Roso ("Plaintiff") seeks judicial review of the final decision of Michael J. Astrue ("Defendant"), Commissioner of the Social Security Administration ("SSA"), denying her application for Disability Insurance Benefits ("DIB").  ECF Dkt. #1 (hereinafter, ECF Dkt. filing notations refer to Case No. 5:09CV198, unless otherwise indicated).  For the following reasons, the undersigned RECOMMENDS that the Court REVERSE the Commissioner's decision and REMAND the instant case for further proceedings:

## I.    PROCEDURAL HISTORY

On December 5, 2003, Plaintiff filed an application for DIB, alleging an onset date of March 20, 1988.  Tr. at 47-49.[1]  The SSA denied her claim initially and on reconsideration.  *Id.* at 31-41.

---

[1]    Plaintiff's date last insured was December 31, 1993.  Tr. at 18.  Even following the date last insured, a claimant may apply for DIB during the time that she is disabled, or 12 months thereafter, with some exceptions.  *See* 20 C.F.R. §404.621(d); *Flaten v. Secretary of Health & Human Services*, 44 F.3d 1453, 1460 (9th Cir.) ("The statutory schema thus requires that a disability be continuously disabling from the time of onset during insured status to the time of application for benefits, if an individual applies for benefits for a current disability after the expiration of insured status. ").  Although the undersigned notes that Plaintiff's ten year delay in filing is exceptional, the undersigned is not aware of any time limitation on applying for DIB; however, if Plaintiff is

On June 7, 2006, an ALJ conducted a hearing where he received testimony from Plaintiff. Tr. at 314-38.  Plaintiff was represented by counsel.  *Id.*  A vocational expert attended the hearing, but she did not testify.  *Id*  On August 9, 2006, the ALJ issued a Notice of Decision – Unfavorable, finding that Plaintiff was not disabled.  *Id*. at 11-19.

Plaintiff filed an appeal in this court under Case Number 5:07 CV1057.  On motion of the Commissioner, the Court  remanded the case for a new hearing because the ALJ had incorrectly noted that there were no medical records indicative of a mental impairment prior to the expiration of Plaintiff's insured status.  Case No.: 5:07 CV1057 ECF Dkt. #15, Attach. 1 at 2, ECF #16.  The Commissioner then filed a motion to alter or amend the Court's judgment.  Case No.: 5:07 CV1057 ECF Dkt. #17.  The Court granted the motion and ordered that the matter be remanded to the Appeals Council and that no new hearing was required on remand.   Case No.: 5:07 CV1057 ECF Dkt. #18.

On November 24, 2008, the Appeals Council issued a Notice of Appeals Council Decision Unfavorable, finding that Plaintiff was not disabled.  *Id*. at 339-45.

On January 28, 2009, Plaintiff filed the instant suit.  ECF Dkt.  #1.  On May 28, 2009, Plaintiff filed a brief on the merits.  ECF Dkt. #10.  On July 28, 2009, Defendant filed a brief on the merits.  ECF Dkt. # 12.  On August 12, 2009, Plaintiff filed a reply brief.  ECF Dkt. #13.

II.    **SUMMARY OF RELEVANT PORTIONS OF THE ALJ'S DECISION AND THE APPEALS COUNCIL'S DECISION**

Although Plaintiff's brief on the merits primarily focuses on the ALJ's decision, this Court remanded the case following the ALJ's decision and the Appeals Council ultimately issued the final decision of the Commissioner.  Regardless, the ALJ's decision remains pertinent because the Appeals Council adopted the ALJ's statements regarding the pertinent provisions of the Social Security Act, Social Security Administration Regulations, Social Security Rulings and Acquiescence Rulings, the issues in the case, and the evidentiary facts, as applicable.  Tr. at 342.  The Appeals Council also adopted the ALJ's findings or conclusions regarding whether Plaintiff is disabled.  *Id*.

---

ultimately successful, she will only be entitled to retroactive benefits  for 12-months prior to her application. 20 C.F.R. §404.615(a)(4); 20 C.F.R.§404.621(a)(1).

### A.    The ALJ's Decision

The ALJ first noted that Plaintiff met the insured status requirements of the Social Security Act through December 31, 1993.  Tr. at 18.  The ALJ found that Plaintiff had only one severe impairment: degenerative disc disease.  *Id*.  The ALJ reasoned that Plaintiff underwent a CT scan of the lumbar spine on March 17, 1989 that revealed a central disc herniation at the L4-L5 level.  *Id*. The ALJ noted that the CT showed a slight left facet hypertrophy and moderate right facet hypertrophy was present at L5-S1.  *Id*.  Lastly in regard to Plaintiff's back condition, the ALJ noted that an MRI of the lumbar spine date August 8, 1990 showed degenerative changes at L4-L5 with a bulging disc.  *Id*.

The ALJ discussed Plaintiff's allegations pertaining to carpal tunnel syndrome, but that condition is not at issue in the case at bar.  Tr. at 18.  Therefore, the undersigned will not discuss it any further.

The ALJ stated that there were no supporting records to determine the severity of Plaintiff's mental impairments prior to the date last insured.  Tr. at 18.  Consequently, the ALJ found insufficient evidence to establish depression or anxiety as a medically determinable severe impairment prior to Plaintiff's date last insured.  *Id*. at 18-19.  This issue was to be addressed by the Appeals Council on remand.

The ALJ then determined that Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  Tr. at 19.  The ALJ reasoned that State Agency reviewing physicians Michael Stock, M.D., and Jerry McCloud, M.D., reviewed the relevant medical evidence and were of the opinion the claimant's severe back impairment does not meet or equal any listed impairment. Tr. at 19.  The ALJ stated that new medical evidence had been submitted since state agency physicians performed their review.  *Id*. The ALJ concluded that his review of all of the evidence, including the new evidence, convinced him that the State Agency physicians' opinions are still valid and that Plaintiff's back impairment does not meet or equal a listed impairment.  *Id*.

The ALJ went on to determine Plaintiff's residual functional capacity.  Tr. at 19.  The ALJ determined that she can perform a range of light work.  *Id*.  Specifically she can lift, carry, push and

-3-

pull 20 pounds occasionally and ten pounds frequently; she can sit for six hours and stand and/or walk for six hours in an eight hour workday; she can never climb ladders, robes, or scaffolds and can only occasionally climb ramps and stairs and she can occasionally crouch and stoop.  *Id.*

The ALJ stated that Plaintiff's limitations result from her severe back impairment.  Tr. at 19. The ALJ stated that the claimant alleges that her back problems make standing, sitting, walking, or lying down uncomfortable.  *Id*.  However, after considering the evidence of record he found that Plaintiff's impairment could be expected to produce the alleged symptoms but that her statements concerning the intensity, persistence, and limiting effects were not entirely credible.  *Id.*

The ALJ stated that Plaintiff suffered a work related injury in 1988 when she was lifting computers and noted gradual increasing pain in her neck, upper back, and lower back. Tr. at 19.  The ALJ noted that Plaintiff saw her primary care physician, Dr. Wilson, but  there were not definitive objective findings.  *Id*.  Plaintiff's principal treatment was administered by chiropractor Gary Wheat, who saw Plaintiff approximately two to three times a week.  *Id*.  Mr. Wheat noted temporary relief. *Id*.

The ALJ noted that X-rays of the lumbosacral spine, dated October 18, 1991, revealed a normal lordotic curve and there was no evidence of compression fracture, bone destruction, or subluxation. Tr. at 20.  The ALJ noted that X-rays of Plaintiff's lumbrosacral spine dated April 1993 revealed that the vertebral bodies, their disc spaces, and posterior joints were all intact.  *Id*.  The ALJ stated that a CT scan of the same date indicated no significant abnormality.  *Id*.

The ALJ stated that treating physician Annette Andrews, M.D., treated Plaintiff from July 1993 to February 1997 and authored a letter dated February 3, 1997 reporting that Plaintiff had not been fully evaluated for disabilities regarding chronic back pain. Tr. at 20.  The ALJ stated that Dr. Andrews noted that Plaintiff had been diagnosed with degenerative disc disease at L4-L5, but without evidence of lateral formanial stenosis or herniated disc.  *Id*.

The ALJ stated that Plaintiff's conditions do not affect her abilities to care for her personal needs other than causing her to "go slow." Tr. at 20.  The ALJ further noted that Plaintiff's described daily activities are not limited to the extent that one would expect, given the complaints of disabling symptoms and limitations.  *Id*.

-4-

The ALJ stated that Plaintiff's treatments have been generally successful, noting that Chiropractor Wheat reported decreases in pain and consultative examiner Moses Leeb, M.D. felt that Plaintiff could return to full-time work. Tr. at 20.  The ALJ further noted that Plaintiff had gone for periods without taking any medications for her symptoms.  *Id*.

The ALJ stated that Plaintiff's description of the symptoms is unusual and is not typical for the impairments that are documented by the medical findings in this case. Tr. at 20.  The ALJ reasoned that the MRIs and X-rays for the relevant time frame show only "mild" changes.  *Id*.  He concluded that Plaintiff's condition had deteriorated since her date last insured, but her back impairment was not as limiting for the period from her alleged onset date through her date last insured as alleged, based on a review of the objective medical evidence of record.  *Id*.

The ALJ then addressed the medical opinions of record. Tr. at 21.  He stated that consultative rheumatologist David Mandel, M.D., examined Plaintiff on April 1, 1989, and reported her complaints of neck, shoulder, and back pain.  *Id*.  The ALJ stated:

> **Based on his review of an MRI showing L4-5 herniated disc and a single physical examination, Dr. Mandel thought the claimant was extremely limited.** He felt she could not lift more than five pounds occasionally and could only sit and stand less than six hours total in an eight-hour workday (Exhibit 15F).  **I give little weight to Dr. Mandel's opinion.  It is against the weight of the evidence and *not substantiated by the MRIs*.**

Tr. at 21 (emphasis added).  Likewise, the ALJ noted that Gary Wheat opined on May 21, 1990 that Plaintiff could lift 15 pounds occasionally and ten pounds frequently, sit for five hours, stand and/or walk for four hours in an eight-hour workday and never bend, squat, kneel crouch climb, or reach.  *Id*.  The ALJ similarly discounted this opinion because the MRIs and x-rays established only "mild" degenerative changes.  *Id*.  The ALJ also considered the opinion of examining orthopedic surgeon Moses Leeb, M.D., who opined that Plaintiff could sit for four hours and stand and/or walk for two hours in an eight-hour workday.  *Id*.  The ALJ assigned this opinion little weight because it was not consistent with MRI and x-ray evidence.  *Id*.

Instead, the ALJ assigned the greatest weight to opinions offered by non-examining State Agency reviewing physicians Dr. McCloud and Dr. Stock, who opined that Plaintiff  could sit for six hours and stand and/or walk for six hours in an eight-hour workday.  *Id*.  The ALJ reasoned that

-5-

these physicians based their opinions on the MRIs revealing an L4-5 herniation with fusion of the joint space at L5-S1.  *Id*.  The ALJ stated that the State Agency physicians' opinions were consistent with the MRIs and x-rays.  *Id*.

With regard to Plaintiff's RFC, the ALJ ultimately determined that Plaintiff's limitations did not preclude all basic work-related activity.  Tr. at 22.

The ALJ determined that Plaintiff was not able to perform her past relevant work.  Tr. at 22. He went on to determine that Plaintiff was not disabled because she could perform the full range of light work, with only a limitation to occasional stooping.  *Id*.  Since light work requires only occasional stooping, the ALJ determined that Plaintiff was not disabled pursuant to the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2 ("the Grids").  *Id*.

**B.      Appeals Council's Decision**

On remand from this Court, the Appeals Council issued a decision adopting the ALJ's statements of law and findings of fact.  Tr. at 342.  The Appeals Council went on to address Plaintiff's mental impairments, as the Court directed.  *Id*. at 342-345.

The Appeals Council stated that it was issuing its decision to address Plaintiff's mental impairment on or before Plaintiff's date last insured, December 31, 1993.  Tr. at 343.  The Appeals Council noted that the first mention of a mental condition in the record was made by treating physician Annette L. Andrews, M.D., who noted on July 9, 1993 that Plaintiff was feeling better on Prozac.  *Id*.  The Appeals Council detailed the medical records between that date and Plaintiff's Date Last Insured, but ultimately concluded that there was no consecutive 12-month period during which Plaintiff was unable to understand, carry out, and remember simple instructions; respond appropriately to supervision, coworkers, and usual work situations; and deal with changes in a routine work setting on a sustained basis.  *Id*.  The Appeals Council concluded "[t]herefore, she was capable of performing at least unskilled work at all times on or before December 31, 1993."  *Id*.  The Appeals Council rejected Plaintiff's claims of anxiety attacks because they were not noted in the medical records until August of 1995.  *Id*. at 344.  Ultimately, the Appeals Council modified Plaintiff's RFC  by adding a restriction to unskilled work.  *Id*.

### III.   STEPS TO EVALUATE ENTITLEMENT TO SOCIAL SECURITY BENEFITS

An ALJ must proceed through the required sequential steps for evaluating entitlement to disability insurance benefits.  These steps are:

1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. §§ 404.1520(b) and 416.920(b) (1992));

2. An individual who does not have a "severe impairment" will not be found to be "disabled" (20 C.F.R. §§ 404.1520(c) and 416.920(c) (1992));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement, see 20 C.F.R. § 404.1509 and 416.909 (1992), and which meets or is equivalent to a listed impairment in 20 C.F.R. Pt. 404, Subpt. P, App. 1, a finding of disabled will be made without consideration of vocational factors (20 C.F.R. §§ 404.1520(d) and 416.920(d) (1992));

4. If an individual is capable of performing the kind of work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. §§ 404.1520(e) and 416.920(e) (1992));

5. If an individual's impairment is so severe as to preclude the performance of the kind of work he or she has done in the past, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. §§ 404.1520(f) and 416.920(f) (1992)).

*Hogg v. Sullivan*, 987 F.2d 328, 332 (6th Cir. 1992).  The claimant has the burden to go forward with the evidence in the first four steps and the Commissioner has the burden in the fifth step.  *Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

### IV.   STANDARD OF REVIEW

Under the Social Security Act, the ALJ weighs the evidence, resolves any conflicts, and makes a determination of disability.  This Court's review of such a determination is limited in scope by § 205 of the Act, which states that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."  42 U.S.C. § 405(g).  Therefore, this Court's scope of review is limited to determining whether substantial evidence supports the findings of the Commissioner and whether the Commissioner applied the correct legal standards.  *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990).  The Court cannot reverse the decision of an ALJ, even if substantial evidence exists in the record that would have supported an opposite conclusion, so long

as substantial evidence supports the ALJ's conclusion. *Walters v. Comm'r of Soc. Sec.,* 127 F.3d 525, 528 (6th Cir.1997). Substantial evidence is more than a scintilla of evidence, but less than a preponderance. *Richardson v. Perales,* 402 U.S. 389, 401 (1971). It is evidence that a reasonable mind would accept as adequate to support the challenged conclusion. *Id.*; *Walters,* 127 F.3d at 532. Substantiality is based upon the record taken as a whole. *Houston v. Sec'y of Health and Human Servs.,* 736 F.2d 365 (6th Cir. 1984).

**V.      ANALYSIS**

For the purposes of this analysis, the undersigned will primarily refer to the Appeals Council's decision because the Appeals Council adopted the ALJ's findings regarding Plaintiff's physical impairments. Tr. at 342. Thus, the Appeals Council's decision is the Commissioner's final decision.

**A.      Whether the Appeals Council erred in finding that Plaintiff's herniated disc and mental impairments were not severe**

**i.      Herniated Disc**

Plaintiff first contends that the Appeals Council erred in finding that her herniated disc was not severe in nature. ECF Dkt. #10 at 9-12. Plaintiff contends that the Appeals Council grossly underestimated Plaintiff's back condition as degenerative disc disease, when objective medical evidence demonstrated a disc herniation and spinal fusion. *Id.* at 10.

Generally an error by the ALJ in this regard is harmless. The Sixth Circuit held in *Maziarz v. Secretary of Health & Human Services*, 837 F.2d 240, 244, (6th Cir. 1987), that an ALJ's finding of non-severity of a condition could not constitute reversible error where the ALJ found other impairments to be severe. The *Maziarz* court reasoned that, upon determining that a claimant has one severe impairment, the regulations require the Secretary to continue with the remaining steps in his disability evaluation as outlined above. *Id.*; *see also Fisk v. Astrue*, 253 Fed.Appx. 580, 2007 WL 3325869, (6th Cir. Nov. 9 2007), unreported ("Because the ALJ considered these impairments when determining Fisk's residual functional capacity, we find it unnecessary to decide whether the ALJ erred in classifying the impairments as non-severe at step two.") (internal quotation omitted); In *Boothe v. Commissioner of Social Security*, the Southern District of Ohio:

In the instant case, the ALJ determined that plaintiff suffered from severe impairments of degenerative disc disease in the lumbar spine and depression. Although the ALJ did not identify the other conditions cited by plaintiff as severe impairments, a review of the ALJ's decision indicates he did consider the limitations and restrictions imposed by plaintiff's remaining conditions in the remaining steps of the disability determination process as required under Social Security Ruling 96-8p. When he assessed plaintiff's residual functional capacity, the ALJ considered the evidence of loss of disc height, disc dessication, disc bulge and protrusion, and the annular disc tears from 2002 and 2003, as well as the later 2005 evidence from Dr. Sakalkale, showing tenderness and muscle spasm at L4-5 and L5-S1, diminished lumbar range of motion, negative straight leg raising, 5/5 strength in the lower extremities, intact sensation, and symmetrical deep tendon reflexes. (Tr. 14-15, 16). The ALJ considered this evidence, along with the December 2003 findings of consultative examiner Dr. Akaydin, in determining plaintiff's RFC. (Tr. 16-17). Because the ALJ considered these impairments when determining plaintiff's residual functional capacity, including those symptoms and limitations which plaintiff characterized as being caused by such impairments, any failure on the part of the ALJ to characterize such impairments as "severe" at step two of the sequential evaluation process does not constitute reversible error. *Maziarz*, 837 F.2d at 244. Therefore, plaintiff's first assignment of error is without merit.

Case No. 1:06-CV-00784, 2008 WL 281621 at *10 (S.D.Ohio Jan. 31, 2008), slip op.(footnote omitted).

Unlike *Boothe*, it is clear that the Appeals Council failed to properly consider the evidence relating to Plaintiff's herniated disc impairment. In the case at bar, the Appeals Council's finding of non-severity prejudiced Plaintiff because the Appeals Council: (1) failed to consider Plaintiff's herniated disc under Listing 1.04; (2) improperly discredited Plaintiff's claims relating to symptoms of her herniated disc; and (3) failed to account for Plaintiff's herniated disc in determining her RFC.[2]

Here, the Appeals Council clearly indicated that it considered only Plaintiff's degenerative disc disease under the listings:

State Agency reviewing physicians Michael Stock, M.D., and Jerry McCloud, M.D., reviewed the relevant medical evidence and were of the opinion that **claimant's severe back impairment** does not meet or equal any listed impairment (Exhibit 4F).

Tr. at 19 (emphasis added). In referring to "claimant's severe back impairment," the Appeals Council clearly indicated that it was considering the only severe impairment that it identified –

---

[2] The undersigned notes that the Appeals Council should have considered the effects of the herniated disc on Plaintiff's RFC even if the condition was not considered to be a severe impairment. *See Denton v. Astrue*, --- F.3d ----, 2010 WL 652979, (Feb. 25, 2010), slip op. at 3 ("When determining a claimant's RFC, the ALJ must consider the combination of all limitations on the ability to work, including those that do not individually rise to the level of a severe impairment."); 20 C.F.R. § 404.1523; 20 C.F.R. §404.1545(a)(2).

degenerative disc disease.  Tr. at 18.  As Plaintiff asserts, degenerative disc disease and a herniated disc are not the same.  The Listing itself acknowledges that the two disorders are different "Disorders of the spine (e.g., **herniated nucleus pulposus**, spinal arachnoiditis, spinal stenosis, osteoarthritis, **degenerative disc disease**, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord."  20 C.F.R. Part 404, Subpart P, Appendix 1, Listing 1.04 ("Listing 1.04"); *see also Anthis v. Astrue*, Case No. Civil Action No. 1:08CV99,  2009 WL 1116339 at *2 (W.D.Ky.,April 24, 2009), unreported, *discussed infra*.

Further, the Appeals Council's reliance on Dr. Stock and Dr. McCloud's opinion is misplaced.  While the Appeals Council stated that these doctors opined that Plaintiff's condition did not meet or equal a listed impairment, the record to which the Appeals Council cites (Exhibit 4F), is a physical RFC assessment.  *See* Tr. at 136- 140.  The opinion is in fact authored by Dr. Stock and Dr. McCloud, but it offers no opinion regarding the Listings.  *See id.*  In sum, the Appeals Council's failure to find Plaintiff's herniated disc to be a severe impairment resulted in prejudice because the Appeals Council failed to consider Plaintiff's impairment under Listing 1.04 and because the Appeals Council's decision is otherwise not supported by substantial evidence.

The Appeals Council went on to determine that Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were not entirely credible.  Tr. at 19. The Appeals Council made this finding, claiming that "[t]he MRIs and x-rays for the relevant time frame show only 'mild' changes."  Tr. at 20.  This finding is erroneous because a CAT scan taken after the alleged onset date show a 7mm central disc herniation at L4-L5.  *See* Tr. at 47 (as to onset date); Tr. at 100 (as to MRI).  Therefore, even if the MRI showed mild changes, the Appeals Council's RFC analysis failed to address the April 17, 1989 CAT scan report noting a 7mm herniation.  *See* Tr. at 100.  As one district court stated:

> **The very nature of the plaintiff's impairment - a herniated disc -suggests that it can reasonably be expected to cause severe pain**. *See Hale v. Bowen*, 831 F.2d 1007, 1011 (11 th Cir.1987)(cervical nerve root compression syndrome, as well as scoliosis, degenerative disc disease and cervical spondylosis, could reasonably be expected to produce the plaintiff's alleged pain); *Kent v. Sullivan*, 788 F.Supp. 541, 544 (M.D.Ala.1992)(L3-4 disc herniation, among other conditions, could reasonably be expected to produce the pain alleged). *Cf. Sewell v. Bowen*, 792 F.2d 1065, 1068 (11 th Cir.1986)(acute bursitis could reasonably be expected to cause disabling pain). The ALJ did not address or distinguish these cases.

> Moreover, the medical evidence in this case suggests the plaintiff's herniated disc could reasonably be expected to produce severe pain. The plaintiff's March 1995 MRI revealed a 5 mm diffuse disc bulge or small bilateral herniation at L5-S1, which was mildly indenting the thecal sac. (Tr. 224) A herniated lumbar disc causes pain when it compresses or irritates the spinal cord or nerve roots. Merck Manual 1441 (15 th ed.1987). The thecal sac, or dura mater, is the outer of three protective coverings of the spinal cord, 2 Attorney's Dictionary of Medicine D-229 (1999); *id*. Fig. S-2, and indentation of the thecal sac suggests possible impingement on the spinal cord.

*Fields v. Apfel*, Case No. 98-0244-P-G, 2000 WL 204613 at *3 (S.D.Ala. Jan. 31, 2000), unreported (footnotes omitted).  Here, Plaintiff's herniated disc protruded 7mm, but the Appeals Council gave it no consideration.  Instead, the Appeals Council relied on MRIs that showed 'mild' changes and a CT scan from April of 1993.  Tr. at 20.  In discounting Plaintiff's credibility, the Appeals Council also relied on 1993 CAT scan that showed a normal lumbosacral spine.  Tr. at 20 citing Tr. at 286-87.

It was also inappropriate for the Appeals Council to discount Plaintiff's credibility based solely upon the ALJ's own interpretation of Plaintiff's MRIs.  Other district courts have observed the impropriety accompanying an ALJ's interpretation of MRI evidence:

> The ALJ discounted these limitations because he believed the December 2006 MRI report actually showed some improvement in plaintiff's degenerative disc disease since February 2006 (Tr. 15). However, the ALJ is simply not qualified to interpret the raw medical data in these MRI reports and no medical opinion in the record supports the ALJ's determination.  *Nguyen v. Chater*, 172 f3d 31, 35 (1st Cir.1999).

*Deno v. Astrue*, 2009 WL 2591665 at *6 (W.D.Ky. Aug. 21, 2009), slip op. (footnote omitted); *see also Nguyen*, 172 f3d at 35 ("As a lay person, however, the ALJ was simply not qualified to interpret raw medical data in functional terms and no medical opinion supported the determination."); *see also Anthis*,  2009 WL 1116339 at *2 ("There were two conditions identified as causing the 2006 problems. Degenerative disc disease is progressive, while herniated nucleus pulposus may worsen or improve or stay the same over time; thus, a change in level of severity over the course of twelve months would not be unexpected, and the ALJ's treatment of these records as inconsistent is quite

puzzling.").[3]

In this case, the Appeals Council's endeavor to interpret the MRIs and CAT scans is particularly troubling because there is "often [a] discordant relationship between MRI findings and [low back pain] symptoms." Paul F. Beattie, Steven P. Meyers, *Magnetic resonance imaging in low back pain: general principles and clinical issues*, 7/1/98 Physical Therapy 738, 1998 WLNR 7330136. Further:

> The clinical manifestations of [low back pain] result from a complex interaction of biologic, psychologic, sociologic, and environmental factors that must all be considered when classifying the patient. Although certain MRI findings are critical to determining diagnostic classification and intervention, inappropriate interpretation of abnormalities visible on MRI may lead to erroneous patient classification and interventions that are inappropriate. As with any diagnostic test, lumbar MRI must be related to clinical findings to be meaningful. In the absence of corroborating physical examination findings, MRI findings are not adequate to classify patients for treatment.

*Id*.  In sum, the Appeals Council offered no medical or legal support for its interpretation of the MRIs and CAT scans.  Even if the MRIs and CAT scans were to some extent inconsistent with each other, it was the province of those trained in the medical field to examine them.  The undersigned will not go as far as the *Anthis* court did in stating that a herniated nucleus pulposus may worsen or improve or stay the same over time; however, the undersigned recommends that the Court find fault with the Appeals Council's assumption that a change in Plaintiff's CAT scan conclusively establishes that she did not have a severe impairment resulting from a herniation.

Given the Appeals Council's failure to consider Plaintiff's herniated disc condition as a severe impairment, the undersigned recommends that the Court find that the Appeals Council failed to consider Plaintiff's condition in determining her RFC.  The Appeal Council's treatment of Dr. Leeb's opinion encapsulates the Appeals Council's mistreatment of the evidence.  The Appeals Council adopted the ALJ's opinions regarding Dr. Leeb.  Tr. at 342.  The ALJ stated that Dr. Leeb opined that Plaintiff could carry 30 pounds occasionally and 15 pounds frequently, sit for four hours and stand and /or walk for two hours in an eight-hour day.  Tr. at 21.  The ALJ also noted that Dr.

---

[3]     The undersigned gives limited weight to the foregoing observation by the *Anthis* court because the court did not cite any medical sources as support.  However, the *Anthis* court's conclusion highlights the impropriety of the Appeals Council's interpretation of the MRI and CAT scans.

Leeb opined that Plaintiff could return to her past work on a part-time basis and would eventually be able to go back to work full-time. *Id.* The ALJ gave little weight to Dr. Leeb's opinion regarding Plaintiff's ability to sit, stand, and walk because the opinion was inconsistent with the MRIs, x-rays and physical examination. *Id.* But, the ALJ found Dr. Leeb's opinion related to her ability to return to work was supported by the weight of the evidence. *Id.* The undersigned recommends that the Court find this treatment of the evidence to be beyond the Commissioner's bounds. Dr. Leeb was a medical professional, who considered the medical evidence and examined Plaintiff. The ALJ and Appeals Council improperly substituted their own interpretation of the MRIs and CAT scans for those of a medical professional of record. Consequently, they failed to consider the impact of Plaintiff's condition on her RFC.[4]

The ALJ's treatment of Dr. Leeb's opinion was plainly improper. As the Southern District of Ohio observed, an ALJ cannot substitute his own medical opinion for that of an examining physician:

> Dr. Griffin's records include a January 28, 2001 history and physical examination report (TR 251-252), after which Griffin continued to see Plaintiff on a regular basis. The record simply does not support the ALJ's criticism of Griffin's failure to thoroughly examine Plaintiff. The prior district court's opinion observed that Siegel had specifically relied on Plaintiff's lumbar radiculopathy, the MRI results, and the EMG test. The court held: "The ALJ's lay notation that the MRIs did not show nerve root compression cannot substitute for the physician's interpretation of those test results and his opinions as to the functional limitations caused by Booth's disc disease." This Court arrives at the same conclusion here. The lack of "definite" nerve compression is not a sound basis for the ALJ to reject the opinions of the physicians who actually examined and treated Plaintiff, and who found he had radiculopathy notwithstanding the lack of "definite" nerve compression.

*Booth v. Commissioner of Social Sec.*, Case No. 1:06-cv-122, 2008 WL 744230 at *4 S.D.Ohio Mar. 19, 2008) unreported; *see also Blythe v. Astrue*, Case No. No. 1:08CV-00104-J, 2009 WL 425583 at *6 (W.D.Ky. Feb 20, 2009) ("There must be some medical support for the ALJ's physical RFC finding because, as a lay individual, an ALJ is 'simply not qualified to interpret raw medical data [e.g., the MRI results at AR, p. 112] in functional terms.' ").

In sum, the Appeals Council improperly interpreted raw medical data and was without

---

[4]     Although the Appeals Council should have considered Petitioner's herniated disc in assessing her RFC, it apparently did not. *See supra* note 2.

support in the form of a medical opinion when it concluded that the MRIs and X-rays were inconsistent with Plaintiff's alleged symptoms and limitations.  Consequently, the Appeals Council erred in failing to find that Plaintiff had a severe impairment resulting from a herniated disc. Plaintiff suffered prejudice because the Appeals Council: (1) failed to consider Plaintiff's herniated disc under Listing 1.04; (2) improperly discredited Plaintiff's claims relating to symptoms of her herniated disc; and (3) failed to account for Plaintiff's disc in determining her RFC.

### ii.        Mental Impairments

Next, Plaintiff alleges that the Appeals Council erred in failing to consider her depression and anxiety to be severe conditions.  Tr. at 10.  The undersigned again recommends that the Court find that the Appeals Council erred and that the error resulted in prejudice to Plaintiff.

The Appeals Council adopted the ALJ's statement of law pertaining to the durational requirement, as follows:

> Disability is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment or combination of impairment that can be expected to result in death or that has lasted or ***can be expected* to last for a continuous period of not less than 12 months.**

Tr. at 16, 342 (emphasis added).  Despite the foregoing, the Appeals Council stated that Plaintiff's impairments were severe for a period during a brief time during the insured period, but they did not satisfy the durational requirement because there was no consecutive 12-month period during which Plaintiff was unable to understand, carry out, and remember simple instructions; respond appropriately to supervision, coworkers, and usual work situations; and deal with changes in a routine work setting on a sustained basis.  Tr. at 343.  The Appeals Council concluded "[t]herefore, she was capable of performing at least unskilled work at all times on or before December 31 1993."

The Appeals Council completely failed to consider whether Plaintiff's condition could be expected to last for a 12-month period.  Under the Appeals Council's application of the Regulations in this case, a claimant must actually be disabled for 12 months within the insured period.  This interpretation is plainly incorrect.  The United States Supreme Court has stated that:

> [T]he Agency's regulations reflect the Agency's own longstanding interpretation. See Social Security Ruling 82-52, p. 106 (cum. ed. 1982) ("In considering 'duration,' it is the inability to engage in [substantial gainful activity] that must last the required 12-month period"); Disability Insurance State Manual § 316 (Sept. 9, 1965),

> Government Lodging, Tab C, § 316 ("Duration of impairment refers to that period of time during which an individual is continuously unable to engage in substantial gainful activity because of" an impairment); OASI Disability Insurance Letter No. 39 (Jan. 22, 1957), *id.*, Tab A, p. 1 (**duration requirement refers to the "*expected duration of the medical impairment*" at a "level of severity sufficient to preclude substantial gainful activity"**). And this Court will normally accord particular deference to an agency interpretation of "longstanding" duration. *North Haven Bd. of Ed. v. Bell*, 456 U.S. 512, 522, n. 12, 102 S.Ct. 1912, 72 L.Ed.2d 299 (1982).

*Barnhart v. Walton*, 535 U.S. 212, 220, 122 S.Ct. 1265 U.S. (2002) (emphasis added).  Likewise, the Sixth Circuit Court of Appeals has stated that: "The Act entitles to benefits payments certain claimants who, by virtue of a medically determinable physical or mental impairment of at least a year's **expected duration**, cannot engage in 'substantial gainful activity.' " *Combs v. Commissioner of Social Security*, 459 F.3d 640, 642 (6th Cir. 2006) (en banc) citing 42 U.S.C. § 423(d)(1)(A) (emphasis added).

In this case, the Appeals Council found Plaintiff's mental impairments to be severe, acknowledging onset of the conditions prior to the date last insured.  Consequently, evidence from the four-month period prior to Plaintiff's date last insured should have been considered to determine if her condition would have been expected to last for 12 months.  Further, evidence generated after Plaintiff's date last insured was still relevant insofar as it related back to her condition as it existed during the insured period. *See Gambill v. Bowen*, 823 F.2d 1009, 1013 (6th Cir.1987).  The Appeals Council's decision is devoid of any analysis pertaining to the expected duration of Plaintiff's condition.  Accordingly, the undersigned recommends that the Court remand the instant case for further fact-finding, analysis, and articulation by the ALJ.  Specifically, the ALJ should consider whether Plaintiff's mental impairments meet or equal a listed impairment and what effect if any her impairments have on her RFC.

As a final consideration pertaining to the Appeals Council's consideration of the duration of Plaintiff's mental impairments, Plaintiff notes that the Appeals Council contradicted itself by finding that her mental impairments were not severe but then determining that she had the RFC to perform unskilled work.  ECF Dkt. #10 at 11-12.  The undersigned noted that the Appeals Council found that Plaintiff "was capable of performing **at least**  unskilled work at all times on and before December 31, 1993," Tr. at 343 (emphasis added).  As discussed above, the Appeals Council was

-15-

required to consider the effects of non-severe impairments when assessing Plaintiff's RFC.  *See supra* note 2; 20 C.F.R. §404.1545(a)(2).  However, it appears that the Appeals Council added this restriction as a precautionary measure.   There is no indication that the Appeals Council considered Plaintiff's limitations resulting from the symptoms of her mental impairments as it was required to do.  *See* 20 C.F.R. §404.1545(a)(3).  The Appeals Council stated that "there was no consecutive 12-month period" during which she was restricted from a mental perspective; therefore, she was at least capable of performing unskilled work.  It appears that the Appeals Council was focused on the durational analysis, but even assuming that  her condition did not meet the durational requirement the Appeals Council should have considered the effects of her symptoms on her ability to perform vocational tasks.   *See* 20 C.F.R. §404.1545(a)(2),(3).  Accordingly, if Plaintiff does not meet a Listing, further articulation is necessary to ensure that the Commissioner has considered the effects of Plaintiff's mental impairments on her RFC.

> **B.**     **Whether the ALJ and the Appeals Council Erred in Not Consulting a Medical Expert**

Plaintiff next contends that the ALJ erred in failing to consult a medical expert to determine whether Plaintiff met or equaled Listing 1.04 and whether Plaintiff's complaints and the conclusions reached by her providers were consistent with those of a person suffering from a herniated disc and depression.  ECF Dkt. #10 at 12-14.  Plaintiff concludes that, by failing to consult a medical expert, "the ALJ was forced to sit in the shoes of a qualified medical expert."  *Id*. at 13.

The Sixth Circuit Court of Appeals has outlined the considerations surrounding an ALJ's authority to consult a medical expert:

> An ALJ has "the ultimate responsibility for ensuring that every claimant receives a full and fair hearing...." *Lashley v. Sec'y of H.H.S.*, 708 F.2d 1048, 1051 (6th Cir.1983); *see also Kendrick v. Shalala*, 998 F.2d 455, 458 (7th Cir.1993) (stating that "[h]ow much evidence to gather is a subject on which district courts must respect the Secretary's reasoned judgment"). Additionally, 20 C.F.R. §§ 404.1527(f)(2)(iii) and 416.927(f)(2)(iii) provide discretion rather than a mandate to the ALJ to decide whether to solicit medical expert testimony, stating that ALJs "may ... ask for and consider opinions from medical experts on the nature and severity of [a claimant's] impairment(s)...." *See Davis v. Chater*, 104 F.3d 361 (table), 1996 U.S.App. LEXIS 33614, at *6 (6th Cir. Dec. 19, 1996) (finding 20 C.F.R. §§ 404.1427(f)(2) and 416.927(f)(2) (1996) specifically give an ALJ discretion to decide whether to call a medical expert).

In *Allison v. Apfel*, a case in which the claimant was without counsel, this Court held

that the record was fully developed, where the claimant himself was the only one who testified at the hearing before the ALJ, and the record contained reports from two psychologists and a psychiatrist. 2000 WL 1276950, at *5, 2000 U.S.App. LEXIS 22689, at *17 (6th Cir.2000); *see also Kendrick*, 998 F.2d at 456-58 (noting that a record is never really complete but "taking 'complete record' literally would be a formula for paralysis, undermining all of the objectives of simplified procedure"). This Court has also previously found that an ALJ "properly determined that the record contained sufficient evidence to decide [a claimant's] disability claims absent expert medical testimony because the record contained [the claimant's] extensive medical history." Williams v. Callahan, 1998 WL 344073, at *4 n. 3, 1998 U.S.App. LEXIS 10777, at *10 n. 3 (6th Cir. May 26, 1998).

*Simpson v. Commissioner of Social Sec.*, 344 Fed.Appx. 181, 189, 2009 WL 2628355 (6th Cir., Aug. 27, 2009), unreported.  Based on the foregoing, the undersigned recommends that the Court find the ALJ's decision not to consult a medical expert was not erroneous in and of itself.  The ALJ was not forced to sit in the shoes of a medical expert because he could have gone on to decide the case on the evidence of record and adopted the opinions of the treating physicians.  However, the ALJ did commit reversible error when he took the step of interpreting raw medical data, rather than accepting medical opinions of record or consulting  a medical expert to see if those opinions were consistent with the objective medical evidence.  This error has been addressed in Section V.A., above, and will be further addressed in section V.C., below.  The undersigned does not recommend that the Court mandate the ALJ to consult a medical expert on remand because the record contains ample medical evidence from the insured period and opinions from multiple examining physicians that are generally consistent.

### C.    Whether the Appeals Council Erred in Assessing Plaintiff's RFC, Relying on the Grids, and Discounting Treating Source Opinions

Lastly, Plaintiff contends that the Appeals Council erred in assessing her RFC and applying the Grids because she required a sit-stand option.  ECF Dkt. #10 at 14-16.  Plaintiff reasons that multiple physicians examined Plaintiff and none of them believed that she could sit, stand, or walk for up to six hours, as the Appeals Council ultimately determined.  *Id*. at 15.  Instead of deferring to the opinions of treating and examining physicians, the Appeals Council adopted opinions of non-examining, reviewing physicians based upon the reasoning that their opinions were consistent with MRI and x-ray records.  Tr. at 21.

In the context of awarding attorney's fees, a district court considered a similar factual

scenario and held that the Commissioner was not reasonably justified in opposing an appeal where

the ALJ rejected a treating source's opinions based upon his own interpretation of raw medical data:

> When viewed as a whole, the Commissioner's position in support of the ALJ's decision was not reasonably based in law and fact. The ALJ's assessment of Plaintiff's residual functional capacity was not supported by substantial evidence because the ALJ rejected the opinion of Dr. Mukerjee-Plaintiff's very long-term care physician-without relying on a contrary medical source opinion and by overlooking the reasons Dr. Mukerjee provided for his opinions, particularly, but not limited to, the results of two MRIs. The ALJ rejected treating specialist Dr. Smith's opinions concerning the results of Plaintiff's surgery without relying on a contrary medical source opinion. Instead, the ALJ substituted his own lay medical opinion in place of Dr. Smith's opinion. The ALJ further relied on his own lay interpretation of Plaintiff's two MRIs instead of relying on a medical source opinion interpreting these two MRIs. (Doc. # 9 at 16-17). The ALJ also overlooked additional medical test results that supported Dr. Smith's opinions. Id. at 17 (detailing the test results the ALJ overlooked or ignored). In light of the ALJ's selective consideration of the medical evidence when evaluating the opinions of treating specialist Dr. Smith and very long-term treating physician Dr. Mukerjee along with the ALJ's reliance on his own lay medical opinion in place of the opinions of Dr. Smith, the Commissioner's decision to support the ALJ's denial of benefits lacked substantial justification. *See Howard*, 376 F .3d at 554 ("Under the circumstances of this case, where the administrative law judge was found to have selectively considered the evidence in denying benefits, we hold that the Commissioner's decision to defend the administrative law judge is without substantial justification.").

*Carlisle v. Barnhart*, Case No. 3:05CV0238, 2008 WL 420032 at *2 (S.D.Ohio Feb. 14, 2008),

unreported.  As discussed in Section V.A., above, the ALJ improperly interpreted raw medical data.

He did not rely on contrary medical source opinion.  In fact, Dr. Stock and Dr. McCloud opined that

"[Plaintiff's] statements are consistent with the medical evidence available."  Tr. at 140.  Their

opinions simply varied in degree from those of Plaintiff's treating sources; they believed that she

could sit, stand, and walk for longer periods than the treating and examining physicians did.  This

situation is precisely where the treating source rule should be applied because those with familiarity

of the claimant's condition are in a better position to assess the limiting effects of its symptoms.

An ALJ must adhere to certain standards when reviewing medical evidence in support of a

claim for social security.  Most importantly, the ALJ must generally give greater deference to the

opinions of the claimant's treating physicians than to those of non-treating physicians.  SSR 96-2p,

1996 WL 374188 (July 2, 1996); *Wilson*, 378 F.3d at 544. A presumption exists that the opinion of

a treating physician is entitled to great deference.  *Id.*; *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234,

243 (6th Cir. 2007).  Accordingly, if that presumption is not rebutted, the ALJ must afford

controlling weight to the opinion of the treating physician if that opinion regarding the nature and severity of a claimant's conditions is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in [the] case record." *Wilson,* 378 F.3d at 544. "The determination of disability is [ultimately] the prerogative of the [Commissioner], not the treating physician." *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004) quoting *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir.1985). When an ALJ determines that a treating physician's opinion is not entitled to controlling weight, he must consider the following factors in determining the weight to give to that opinion: the length, frequency, nature, and extent of the treatment relationship; the supportability and consistency of the physician's conclusions; the specialization of the physician; and any other relevant factors. *Id.*

If an ALJ decides to discount or reject a treating physician's opinion, he must provide "good reasons" for doing so. SSR 96-2p. The ALJ must provide reasons that are "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Id.* This allows a claimant to understand how her case is determined, especially when she knows that her treating physician has deemed her disabled and she may therefore " 'be bewildered when told by an administrative bureaucracy that [he or she] is not, unless some reason for the agency's decision is supplied.' " *Wilson,* 378 F.3d at 544 quoting *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir.1999). Further, it "ensures that the ALJ applies the treating physician rule and permits meaningful appellate review of the ALJ's application of the rule." *Id.* If an ALJ fails to explain why he rejected or discounted the opinions and how those reasons affected the weight accorded the opinions, this Court must find that substantial evidence is lacking, "even where the conclusion of the ALJ may be justified based upon the record." *Rogers,* 486 F.3d at 243, citing *Wilson*, 378 F.3d at 544.

Here, Dr. Cain and Dr. DiCello both opined that Plaintiff could only sit and stand for two hours out of an eight hour workday and that she could walk for one hour. Tr. at 178-79; Tr. at 192-

-19-

93.[5]  Dr. Andrews opined that Plaintiff could sit, stand, and walk for one hour each, even though Dr. Andrews was aware that a CAT scan did not show a herniated disc.  Tr. at 203, 206-07. Chiropractor Gary Wheat opined that Plaintiff could sit for five hours, stand for four hours, and walk for four hours.  Tr. at 145-46.  Dr. Wilson opined that Plaintiff could only sit, stand, and walk for one hour each out of an eight hour workday.  Tr. at 237-38.  Lastly, Dr. Leeb opined that Plaintiff could sit for four hours, and stand and walk for two hours each in an eight-hour workday.  Tr. at 244-45.

Rather than defer to the opinions of Dr. Cain, Dr. DiCello, Dr. Wilson, Dr. Andrews and the other examining physicians, the ALJ determined that their opinions were inconsistent with medical evidence of record.  The ALJ had no medical opinion upon which to base that decision since the opinions upon which he ultimately relied stated that Plaintiff's complaints were consistent with the medical evidence.  The ALJ could have rejected the opinions of treating physicians if he had reason to believe that those opinions were inconsistent with medical evidence of record.  However, his own analysis of the MRIs is insufficient.  These physicians have reviewed the same medical records as the ALJ,[6] but they have also conducted clinical exams of Plaintiff and applied specialized medical training to assess Plaintiff's limitations.  The ALJ and the Appeals Council's treatment of the medical opinions of record plainly violates the treating source rule.

The undersigned's conclusion is best evidenced by the ALJ's treatment of Dr. Mandel's opinion.  Although Dr. Mandel was not a treating source, he did examine Plaintiff and use his specialized training as a physician to interpret the medical data.  The ALJ rejected his opinion based merely on the ALJ's own interpretation of the medical records:

> ***Based on his review of an MRI showing L4-5 herniated disc* and a single physical examination, Dr. Mandel thought the claimant was extremely limited.**  He felt she could not lift more than five pounds occasionally and could only sit and stand less than six hours total in an eight-hour workday (Exhibit 15F).  **I give little weight to Dr. Mandel's opinion.  It is against the weight of the evidence and *not substantiated***

---

[5]  The times reflected in this paragraph are total times for each posture in an eight-hour workday, as opposed to consecutive times, which are also reflected in each physician's RFC opinion.

[6]  Of note, Dr. Andrews offered her RFC after acknowledging that there was no evidence of a herniation.  Tr. at 203, 206-07.

**by the MRIs.**

Tr. at 21 (emphasis added).  The ALJ relied upon no contrary medical opinion to determine that Dr. Mandel's opinion was not substantiated by the MRIs.  Rather, he inappropriately reached that determination based upon his own interpretation of the medical evidence.  *See Nguyen*, 172 f3d at 35 ("As a lay person, however, the ALJ was simply not qualified to interpret raw medical data in functional terms and no medical opinion supported the determination."); *Deno*, 2009 WL 2591665 at *6; *Anthis*,  2009 WL 1116339 at *2.

Defendant contends that the opinions of Dr. Cain, Dr. Andrews, and Dr. DiCello were issued after Plaintiff's date last insured, and thus do not fall within the relevant time period considered by the Agency.  ECF Dkt. #12 at n. 11.  It is true that these opinions were offered after the date last insured, but the ALJ acknowledged that Dr. Andrews provided treatment during the insured period. Tr. at 20.  Moreover, neither the ALJ nor the Appeals Council reasoned that treating source opinions contained in the record were being discounted because they were offered outside of the insured period.  The treating source rule requires the Commissioner to articulate his reasons for discounting these opinions.   The Commissioner's post hoc rationalization at this stage is insufficient. Additionally, the opinions upon which the ALJ ultimately relied were also proffered after the date last insured.  *See* Tr. at 140.  Under the Commissioner's logic, those opinions would also be irrelevant.  *See* ECF Dkt. #12 at n. 11.  The Commissioner's logic leaves Dr. Wilson's 1991 opinion to control, unless properly discounted.  Tr. at 237-38.

Additionally, the opinions offered outside of the insured period are relevant because Petitioner must demonstrate that she was disabled from the insured period through the time that she applied for DIB. *See supra* note 1.  And those opinions may be relevant insofar as they relate back to Plaintiff's condition during the insured period.  *Cf. Gambill*, 823 F.2d at 1013.

Defendant further contends that the ALJ was justified in rejecting treating physician opinions because Chiropractor Wheat and Dr. Mandel opined that Plaintiff was a candidate for vocational rehabilitation.  ECF Dkt.#12 at 14-15 citing Tr. at 21.  Defendant's argument and the ALJ's reasoning are not persuasive because Plaintiff's candidacy for vocational rehabilitation does not mean that she was in fact rehabilitated or able to work.

To "rehabilitate" means to "to restore to a former capacity." *See* Merriam-Webster's Online Dictionary: http://www.merriam-webster.com/dictionary/rehabilitation (last accessed on March 11, 2010).  Accordingly, a candidate for vocation rehabilitation would be a person lacking vocational abilities and seeking to have those abilities restored.  This definition of 'rehabilitation' is consistent with Mr. Wheat and Dr. Mandel's restrictive opinions regarding her abilities to sit, stand, and walk.  If Plaintiff did not have restrictions in her RFC, then she would likely not need vocational rehabilitation.  However, a restrictive RFC and a recommendation for vocational rehabilitation appear to be perfectly consistent in this case.

Lastly, Defendant contends that Dr. Wheat provided conservative treatment and that Plaintiff was not taking any medication for her condition.  ECF Dkt. #12 at 14-15.  However, the ALJ did not note any medical opinion showing what medications or treatments would be available for a patient with a disabling herniated disc.  This conclusion again constituted an improper analysis of medical evidence.  As one district court noted:

> The ALJ assumed "regular day treatment" and other "in-depth counseling" was both available to Ms. Brooks and necessary for the treatment of her mental health impairments.  The ALJ's assumption, however, is not supported by any medical evidence. *See McGoffin v. Barnhart*, 288 F.3d 1248, 1252 (10th Cir.2002) ("In choosing to reject the treating physician's assessment, an ALJ may not make speculative inferences from medical reports and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and not due to his or her own credibility judgments, speculations or lay opinion.")

*Brooks v. Astrue*, Case NO. CIV-07-1418-D,  2009 WL 395241 at *5 (W.D.Okla., Feb. 17, 2009), slip op.; see also *Salazar v. Astrue*, Case No. CIV-07-912-L., 2008 WL 5046403 at *5 (W.D.Okla. Nov. 20, 2008).  Here, the ALJ assumed that treatment was available.  Further, he did not point to a medical opinion demonstrating what, if any, risks or side effects would accompany those treatments, and what the prognosis would be.  If no treatments were available, then the medical opinions were not inconsistent with the objective medical evidence.  In discounting physicians' opinions based upon conservative treatment, Defendant and the ALJ appear to have assumed that effective treatment for Plaintiff's condition was available.  *See* ECF Dkt. #12 at 15 (where Commissioner contends that Plaintiff's treatment was conservative).

The ALJ stated that "Mr. Wheat notes in his opinion that the claimant was not taking any

medication. **This evidence of noncompliance** further decreases the validity of Mr. Wheat's opinion." Tr. at 21 (emphasis added). The ALJ has misconstrued the record. It does not appear that Mr. Wheat ever prescribed any medication. Mr. Wheat's physical RFC assessment, simply indicates that Plaintiff was "not taking meds, " when asked if her medications would affect her ability to work. Tr. at 147. His opinion does not state that she was prescribed medications or that she was noncompliant with a medication regimen. In fact, on a New England Mutual Life Insurance Company form, Mr. Wheat was asked to indicate the "Nature of Treatment" that he provided, including "surgery and medications prescribed, if any." Tr. at 149. Mr. Wheat wrote, "Chiropractic care as needed," and made no mention of medication. *Id*. Therefore, the ALJ erred in discounting Mr. Wheat's opinion on the basis that Plaintiff was noncompliant with a medication regimen.

Since the ALJ's and the Appeals Council's treatment of the medical opinions was improper, its resulting RFC determination was improper. The undersigned recommends that the Court remand the instant case for further fact-finding, analysis, and articulation pertaining to Plaintiffs's RFC. Consequently, it is unnecessary to address whether the Appeals Council committed an error in relying upon the Grids. In fact, it would be futile to determine whether the Appeals Council's application of the Grids was proper because the analysis depends upon Plaintiff's RFC.

If a claimant can perform all or substantially all of the demands for a given exertional level then an ALJ may apply the Grids in order to determine if the claimant is disabled. SSR 83-11. However, the RFC upon which each table rule is based reflects the absence of any nonexertional limitation. *Id*. Therefore, if an individual's RFC does not coincide with one of the defined exertional levels and/or the claimant possess nonexertional limitations, the ALJ may use the Grid only as a framework. SSR 83-12; SSR 83-24. If an individual's RFC has eroded and the extent of the erosion is unclear, the ALJ must consult a vocational resource. SSR 83-12.

Given the foregoing, the undersigned recommends that the Court remand the instant case for further fact-finding, analysis, and articulation pertaining to Plaintiffs's RFC and, if necessary, to apply the Grids or to consult a vocational resource.

## VI.    CONCLUSION

For the foregoing reasons, the undersigned RECOMMENDS that the Court REVERSE the

-23-

Commissioner's decision and REMAND the instant case for further fact-finding, analysis, and articulation pertaining to: (1) whether Plaintiff's herniated disc and/or mental impairments meet or equal a listed impairment; (2) the effect of Plaintiff's herniated disc and mental impairments on her RFC; (3) Plaintiff's credibility regarding the intensity, persistence, and limiting effects of her impairments; (4) the effect of the examining physicians' opinions on Plaintiffs's RFC; and (5) whether Plaintiff is disabled after reconsidering her RFC.


DATE:  March 11, 2010                              *s/ George J. Limbert*
                                                   GEORGE J. LIMBERT
                                                   UNITED STATES MAGISTRATE JUDGE

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of service of this notice.  Fed. R. Civ. P. 72; L.R. 72.3.  Failure to file objections within the specified time may constitute a WAIVER of the right to appeal the Magistrate Judge's recommendation.  L.R. 72.3(b).